PELICAN ICE CO., LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PELICAN COLD-STORAGE & WAREHOUSING CO., LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 13122, 16671. Promulgated March 20, 1928.

*Ralph G. Schwarz, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

76

78

OPINION.

Morris: The sole question presented for consideration is whether the two petitioners herein are affiliated within the meaning of the

law and, therefore, entitled to file consolidated income and profits-tax returns for the years 1920 and 1921.

Section 240 (b) of the Revenue Act of 1918 and the corresponding provisions of the Revenue Act of 1921 provide:

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

If the parent company here can be said to " own directly or control through closely affiliated interests * * * substantially all the stock of the " subsidiary within the meaning of the Act, as previously defined, it is entitled to file consolidated returns, if not, then the converse is true.

What combination of facts or circumstances must be found to constitute an affiliation within the meaning of the law depends upon the facts of each individual case. *Appeal of Old Colony Railroad Co.*, 1 B. T. A. 1067; *Appeal of Isse Koch & Co.*, 1 B. T. A. 624; *Appeal of Huntington & Clearfield Telephone Co.*, 1 B. T. A. 731; *Appeal of Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666; *Appeal of Mahoning Coal Railroad Co.*, 4 B. T. A. 923.

The words " controls " and " controlled " as used in section 240, *supra* have been defined in the *Appeal of Cleveland & Mahoning Valley Railway Co.*, 4 B. T. A. 1040, to mean " full and complete control," and in the *Appeal of Canyon Lumber Co.*, 1 B. T. A. 473, it is said the word control " referred to in the statute, whether it be legal or otherwise, means control of the voting rights of stock."

Let us examine briefly the salient facts found from the record of these proceedings. Charles H. Behre organized these two corporations, and insofar as the conduct of their respective businesses is concerned, it may be said that he was in absolute control. It is well, however, that we point out at this juncture that control of the business methods without more is not decisive. The test of the statute is ownership or control of substantially all the stock of the corporation. *Appeal of American Auto Trimming Co.*, 6 B. T. A. 1007. We are satisfied that Behre and his immediate family owned substantially all the stock of the parent company in 1920, and all in 1921, but the situation with respect to the subsidiary is wholly different.

The amounts of capital stock of the subsidiary outstanding during the years 1920 and 1921 were 870 and 1,000 respectively, of which the parent company actually owned 430 shares, or 49.4 per cent in 1920, and 541 shares, or 54.1 per cent in 1921. Charles S. Behre and his son Theo. owned 151 shares of stock of the subsidiary during each

of the two years in question, which amounted to 17.3 per cent in 1920 and 15.1 per cent in 1921. The number of shares of the subsidiary actually owned by the parent company, its stockholders and a few employees thereof in 1920 and 1921 were 582 and 712, or 66.9 per cent and 71.2 per cent, respectively.

Therefore, we may safely conclude that the parent company itself and through closely affiliated interests owned or controlled 66.9 per cent of the stock of the subsidiary for 1920 and 71.2 per cent for 1921 which can not be said to be "substantially all the stock" within the meaning of the Act.

The 88 shares of stock of the subsidiary held by customers may be eliminated from further discussion as they can by no stretch of imagination be considered in determining the control exercised by the parent company over the subsidiary through its capital stock.

It remains to be seen, therefore, whether the 200 shares of stock held by Edenborn during these two years can be considered as bringing the parent company's control within the purview of the statute. It is true that Edenborn became a stockholder of the subsidiary under rather peculiar circumstances, and that his principal interest in becoming a stockholder was to share in the ultimate profits to be derived from the purchase and sale of a piece of real estate, and that he, some years later, resold his 200 shares, plus an additional number of shares acquired through his stock dividend, to Behre, at the original cost, plus six per cent interest from the date of his investment, but these factors do not alter the fact that Edenborn, during the years 1920 and 1921, was a stockholder with all the rights and privileges appertaining thereto. It is also true that Edenborn was a friend of Behre, however, there is no showing in the record that this friendship was of such a nature as to create a community of interest between them by which Behre or the parent company was in control of Edenborn's stock.

Therefore, finding, as we must, that the control of the parent company over the subsidiary company's stock, directly or through closely affiliated interests, is limited to 66.9 per cent in 1920 and 71.2 per cent in 1921, we are constrained to hold that the petitioners were not affiliated within the meaning of the law and are, therefore, not entitled to file consolidated returns for the years 1920 and 1921.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

GREEN and MILLIKEN dissent.